UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:17CV1478 JCH ) |
| NANCY SPENCER, | ) ) |
| Defendant. | ) ) |

### MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff American Family Mutual Insurance Company's Motion for Summary Judgment, filed December 21, 2017, and Defendant Nancy Spencer's Cross-Motion for Summary Judgment, filed January 22, 2018. (ECF Nos. 21, 27). The motions are fully briefed and ready for disposition.

### BACKGROUND

Plaintiff American Family Mutual Insurance Company issued Missouri Homeowners Policy No. 24PW-6856-01 to Defendant Nancy Spencer ("Spencer"), effective from July 31, 2014, to December 25, 2014 (the "Policy"). (Policy, attached to Plaintiff's Complaint as Exhibit 1, ECF No. 1-1). The Policy provided liability coverage in the amount of $300,000, under the terms, conditions and endorsements as contained within said Policy. (*Id.*, P. 2). The Policy contained the following relevant provisions:

### DEFINITIONS

**The following words in this policy have defined meanings. They will be printed in bold type.**

1. **Bodily injury** means bodily harm, sickness or disease. It includes resulting loss of services, required care and death.

   **Bodily injury** does not include:….

c. emotional or mental distress, mental anguish, mental injury, or any similar injury unless it arises out of actual bodily harm to the person….

5. **Insured**

   a. **Insured** means **you**….

6. **Insured premises**

   a. Described Location:

   (1) If **you** own the one or two family dwelling described in the Declarations, the **insured premises** means: that dwelling, related private structures and grounds at that location where **you** reside;

   (2) If **you** own the townhouse or row house at the location described in the Declarations, the **insured premises** are: that townhouse or row house, related private structures and grounds used or occupied solely by **your** household for residential purposes at that location.

   b. For Personal Liability and Medical Expense Coverages, **insured premises** also include:

   (1) other premises listed in the Declarations;

   (2) the part of any residential premises **you** acquire for **your** occupancy during the policy period if **we** are notified within 30 days following the date **you** acquired such premises;

   (3) vacant land (other than farm land) owned by or rented to an **insured**. This includes land on which a one or two family dwelling is being built for the personal use of an **insured**;

   (4) an **insured**'s individual or family cemetery lots and burial vaults;

   (5) the part of any residential premises not owned by an **insured**, while an **insured** is temporarily residing there; and

   (6) any premises **you** use in connection with the described location.

   c. For Personal Liability Coverage:
   The **insured premises** also includes any other premises which an **insured** may occasionally rent for other than **business** purposes….

9. **Occurrence** means an accident, including exposure to conditions, which results during the policy period, in:

a. **bodily injury**; or
b. **property damage**.

Continuous or repeated exposure to substantially the same general harmful conditions is considered to be one **occurrence**….

11. **Property damage** means physical damage to or destruction of tangible property, including loss of use of this property. Loss of use of tangible property does not include any resulting loss of value of such damaged property….

14. **You** and **your** refer to the person or people shown as the named **insured** in the Declarations. These words also refer to **your** spouse who is a resident of **your** household….

## LIABILITY COVERAGES - SECTION II

**COVERAGE D - PERSONAL LIABILITY COVERAGE**

**We** will pay, up to **our limit**, compensatory damages for which any **insured** is legally liable because of **bodily injury** or **property damage** caused by an **occurrence** covered by this policy.

**Defense Provision**.

If a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this policy applies, **we** will provide a defense at **our** expense by counsel of **our** choice. **We** will defend any suit or settle any claim for damages payable under this policy as **we** think proper.

**OUR** OBLIGATION TO DEFEND ANY CLAIM OR SUIT ENDS WHEN THE AMOUNT **WE** HAVE OFFERED OR PAID FOR DAMAGES RESULTING FROM THE **OCCURRENCE** EQUALS **OUR LIMIT**….

## EXCLUSIONS - SECTION II

**Coverage D - Personal Liability and Coverage E – Medical Expense** do not apply to:….

10. **Intentional Injury**. **We** will not cover **bodily injury** or **property damage** caused intentionally by or at the direction of any **insured** even if the actual **bodily injury** or **property damage** is different than that which was expected or intended from the standpoint of any **insured**….

14. **Premises Owned, Rented or Controlled**. **We** will not cover **bodily injury** or **property damage** arising out of any act or omission occurring on or in connection with any premises owned, rented or controlled by any **insured** other than an **insured premises**….

**Coverage D - Personal Liability** does not apply to:

1. **Contractual Liability**. **We** will not cover personal liability under any contract or agreement.

This exclusion does not apply to written contracts:

a. directly relating to the ownership, maintenance or use of the **insured premises** not excluded in 2 below or elsewhere in this policy; or
b. in which the **insured** assumes the liability of others prior to the **occurrence**….

3. **Property Owned or Controlled**. **We** will not cover **property damage** to:

a. property owned by any **insured**;
b. property borrowed, used or occupied by, rented to or in the care of any **insured**; or
c. property owned by a corporation or association of property owners of which any **insured** is a member.

**We** will, if any **insured** is legally obligated, pay for **property damage** to item b above caused by fire, smoke or explosion.

4. **Punitive Damages**. **We** will not cover punitive or exemplary damages….

### FUNGI OR BACTERIA EXCLUSION ENDORSEMENT

This endorsement modifies such insurance as is afforded by this policy and replaces any Fungi or Bacteria Exclusion Endorsement previously a part of this policy.

This policy is amended as follows:

### DEFINITIONS

The following definition is added:

**Fungi** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

### EXCLUSIONS – SECTION II

The following exclusion is added under **Coverage D – Personal Liability and Coverage E – Medical Expense** do not apply to:

**Fungi or Bacteria. We** will not cover **bodily injury** or **property damage,** arising out of or resulting from, in whole or in part, any actual, alleged or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of, any **fungi** or bacteria on or within a building or structure, including its contents. Such loss is excluded regardless of any other

cause, event, material or product contributing concurrently or in any sequence to such injury or damage.

**We** will not pay for any loss, cost or expense to abate, test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, dispose of or in any way respond to, or assess the effects of **fungi** or bacteria, by any **insured** or by any other person or entity.

This exclusion does not apply to **bodily injury** or **property damage** arising out of any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for consumption.

All other terms remain unchanged….

## MISSOURI AMENDATORY HOMEOWNERS ENDORSEMENT

This endorsement modifies such insurance as is afforded by this policy and replaces any Missouri Amendatory Homeowners Endorsement previously a part of this policy.

This policy is amended as follows:….

## LIABILITY COVERAGES – SECTION II

The following applies to all policies:

Under:

**COVERAGE D – PERSONAL LIABILITY COVERAGE:**….

**EXCLUSIONS – SECTION II**

The following applies to all policies:

Under:

**Coverage D – Personal Liability and Coverage E – Medical Expense** do not apply to:….

**Intentional Injury** is deleted and replaced by the following:

**Expected or Intended. We** will not cover **bodily injury** or **property damage** arising out of an expected or intended act or omission.

a. This includes any type of **bodily injury** or **property damage** that an **insured:**

(1) intends; or

(2) may expect to result from any intentional act or omission.

  b. This exclusion applies even if the **bodily injury** or **property damage** is:

    (1) of a different kind, quality, or degree than intended;

    (2) to a different person or property than intended;

    (3) the result of a willful and malicious act, no matter at whom the act was directed;

    (4) unexpected or unforeseen by the person injured or the owner of the property damaged; or

    (5) sustained regardless of whether an **insured:**

    (a) is under the influence of alcohol or any controlled substance;
    (b) lacks the mental capacity to govern his or her conduct; or
    (c) is deemed not to have the mental capacity to form the legal intent to commit the act or omission.

  c. This exclusion applies regardless of the theory of relief pursued, asserted, or claimed by anyone seeking compensation under this policy….

Under:

**Coverage D – Personal Liability** does not apply to:

**Punitive damages** is deleted and replaced by the following:

**Punitive, Statutorily Imposed, or Court Ordered Damages.** **We** will not cover punitive, statutorily imposed, or court ordered damages.
This includes any Personal Liability for:
a. punitive, exemplary, statutorily imposed, multiple, or aggravated damages;
b. fines, penalties, or court ordered restitution; or
c. awarded or statutorily mandated attorney fees related to a. or b. above.

(*Id.*, PP. 5, 6, 13, 14, 15, 16, 23, 30, 36, 37).

On or about April 5, 2016, Jane M. Volz ("Volz") filed a Petition for Damages in the Circuit Court of the County of St. Louis, Missouri, against, among others, Spencer. (Petition for Damages, attached to Plaintiff's Complaint as Exhibit 2, ECF No. 1-2). In her Petition, Volz alleges that on or about November 6, 2014, Volz entered into an agreement with Spencer for the purchase of property located at 10564 Windswept Drive[1], in St. Louis County, Missouri.

---

[1] 10564 Windswept Drive is the location of risk identified in the Policy. (*See* Policy, P. 3).

(Petition, ¶ 8). Prior to entering into the agreement, Volz alleges Spencer and others prepared and supplied to Volz a seller's disclosure statement, indicating that Spencer was not aware of any dampness, water accumulation or leakage in the basement. (*Id.*, ¶ 12). Volz alleges that contrary to the representation in the seller's disclosure, prior to entering into the sale agreement Spencer, alone or with others, caused to be performed modifications, renovations or alterations to the basement of the property, which were intended to conceal any evidence of dampness, water accumulation, leakage or cracks in the foundation of the basement. (*Id.*, ¶ 13).

In her Petition, Volz maintains closing on the property and transfer of possession to Volz occurred on or about December 23, 2014. (Petition, ¶ 9). According to Volz, subsequent to closing she discovered that "every time it rains, water leaks and seeps into the basement of the home and that modifications, renovations, and or alterations were made to the basement of said property in an attempt to conceal any evidence of dampness, water accumulation, leakage, mold or cracks in the foundation of the basement." (*Id.*, ¶ 16). Based on these allegations, Volz levels claims for fraudulent misrepresentation, negligent misrepresentation, and violations of the Missouri Merchandising Practices Act against Spencer. (*Id.*, ¶¶ 17-46, 54-71).

As a result of the underlying litigation, Spencer called upon Plaintiff to provide indemnification and a defense to Spencer in said underlying litigation. (Compl., ¶ 11). Plaintiff is providing Spencer with a defense subject to a reservation of rights. (Spencer's Cross-Motion for Summary Judgment, ¶ 5). On May 9, 2017, Plaintiff filed the instant Complaint for Declaratory Judgment, requesting that the Court enter an order declaring that no coverage exists under the Policy, and that Plaintiff is not liable under the Policy to defend, investigate, pay costs or expenses of Spencer in any present or future claim or litigation filed by the underlying plaintiff. (ECF No. 1).

As noted above, Plaintiff filed a Motion for Summary Judgment on December 21, 2017, asserting there is no coverage for the claims brought by Volz in the underlying lawsuit due to the following terms, conditions, and/or exclusions contained in the Policy:

(1) The Underlying Plaintiff's claims are based upon allegations that the Defendants' (sic) representations were fraudulently made, thus intentional;

(2) The Underlying Plaintiff's claims do not meet the definition of "bodily injury," "occurrence" or "property damage;"

(3) The Underlying Plaintiff's claims arise out of the contract for the sale of the property;

(4) The Policy does not provide coverage for property damage arising out of the actual, alleged, or threatened discharge of pollutants;

(5) The Policy does not provide coverage for bodily injury or property damage arising out of any act or omission on or in connection with any premises owned, rented, or controlled by any insured other than the insured premises; and

(6) The Policy does not provide coverage for punitive damages.

(Memorandum in Support of Motion for Summary Judgment ("Plaintiff's Memo in Support"), P. 3). On January 22, 2018, Spencer both responded to Plaintiff's Motion for Summary Judgment and filed a Cross-Motion for Summary Judgment, maintaining that because the underlying Petition sufficiently alleges a potential for coverage under the terms of the Policy, Plaintiff has a duty to defend Spencer in the litigation. (ECF No. 27).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

"Under Missouri law, an insurer's duty to defend is broader than the duty to indemnify." *Hartford Ins. Co. of the Midwest v. Wyllie*, 396 F.Supp.2d 1033, 1036 (E.D. Mo. 2005) (citing *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liability Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999); *Truck Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. App. 2005)). "An insurance company has a duty to defend whenever the insured is exposed to potential liability, no matter how unlikely it is that the insured will be found liable and whether or not the insured is ultimately found liable." *Id.* at 1036-37 (internal quotations and citations omitted). "The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." *Brand v. Kansas City Gastroenterology & Hepatology, LLC*, 414 S.W.3d 546, 552 (W.D. Mo. 2013) (internal quotations and citation omitted); *see also Auto Club Family Ins. Co. v. Jacobsen*, 19 S.W.3d 178, 182 (Mo. App. 2000) (citation omitted)

("The duty to defend arises where the petition alleges facts that give rise to a claim potentially within the policy's coverage, a determination made by comparing the language of the policy with the allegations in the petition."). If the complaint alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend, even though claims beyond coverage may also be present. *Brand*, 414 S.W.3d at 552; *Hartford*, 396 F.Supp.2d at 1037.

Under Missouri law, a negligent misrepresentation claim may be covered by a liability insurance policy providing coverage for an "occurrence" defined as an "accident." *See Wood v. Safeco Ins. Co. of America*, 980 S.W.2d 43, 52 (Mo. App. 1998). Plaintiff, however, maintains that the alleged misrepresentations here did not result in "property damage," as required to trigger coverage under the Policy. Rather, Plaintiff asserts the damage to the property all existed prior to the sale of the home, and was concealed by the acts of Spencer. (Plaintiff's Memo in Support, PP. 7-8). In support of its position, Plaintiff points to cases including *St. Paul Fire and Marine Ins. Co. v. Lippincott*, 287 F.3d 703 (8th Cir. 2002), and *Wyllie*, in which the Eighth Circuit and Eastern District of Missouri respectively held the defects at issue predated any misrepresentations or concealments by the insured and thus were not covered under the policies at issue. (*Id.* at 8-9). *See e.g., Wyllie*, 396 F.Supp.2d at 1039 ("There was no subsequent damage that diminished the value of the condominium; the condominium's true value was the same at the time of the representations as it was when the underlying plaintiffs discovered the alleged misrepresentations."); *see also Payne v. Grinnell Mut. Reinsurance Co.*, 716 F.3d 487, 490 (8th Cir. 2013).

In her response, Spencer asserts the instant case is more similar to *Wood v. Safeco*. (Defendant's Memorandum of Law in Response to Plaintiff's Motion for Summary Judgment,

PP. 4-6). In *Wood*, the buyer of property alleged that the seller/insured "'failed to exercise ordinary and reasonable care' in making representations that 'the residence was not located in a flood plain, had never flooded, and would not flood.'" *Wood*, 980 S.W.2d at 47. The property subsequently flooded twice, and the buyer alleged that had she been advised of the true facts, she would not have purchased the residence and property, and/or would have obtained full and comprehensive flood insurance on the property and residence. *Id.* at 45, 47. The Missouri Court of Appeals found in favor of the insured on the coverage issue, as follows:

> As the trial court found, Buyer's allegations satisfy the elements required to establish a negligent misrepresentation claim. The petitions allege, in part, that as a result of the misrepresentations Buyer was damaged and the alleged damage was the subsequent flooding of property Buyer would not have purchased absent the misrepresentations. Whether or not the flooding damage is causally related to the misrepresentations should have been pursued by Insurer on behalf of Insured in Buyer's litigation, rather than against Insured in this litigation. Moreover, the allegations of the petitions regarding the three to four feet of flood water within the residence and riding arena sufficiently implicate the "loss of use" provision of the policy's definition of "property damage." Therefore, we find Buyer's negligent misrepresentation claims are potentially covered by the umbrella policy issued by Insurer to Insured and, under that policy, Insurer had a duty to defend Insured against Buyer's claims.

*Id.* at 53 (citations omitted).

Upon consideration, the Court finds the instant case is similar to *Wood*, and distinguishable from Plaintiff's cases. In other words, in the underlying Petition Volz alleges that misrepresentations made by Spencer while Spencer owned the property resulted in damages to Volz subsequent to the sale of the property. (*See* Petition, ¶ 16 ("Subsequent to closing the purchase of the Property, Plaintiff discovered that every time it rains, water leaks and seeps into the basement of the home and that modifications, renovations, and or alterations were made to

the basement of said property in an attempt to conceal any evidence of dampness, water accumulation, leakage, mold or cracks in the foundation of the basement.")).[2]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff American Family Mutual Insurance Company's Motion for Summary Judgment (ECF No. 21) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (ECF No. 27) is **GRANTED**, and Plaintiff is obligated to continue providing a defense to Spencer in the underlying suit.

Dated this 19th Day of March, 2018.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[2] The Court recognizes that pursuant to the terms of the Policy, both the occurrence/accident and the resulting property damage must take place during the Policy period. (Policy, P. 5). In light of the fact that the sale of the property occurred on December 23, 2014, and the Policy was in effect only until December 25, 2014, it appears unlikely that any damages subsequent to the sale transpired during the Policy period. Plaintiff has not provided the Court with the exact dates of the alleged damages, however, nor has it provided evidence that the Policy terminated upon the sale of the property. The Court is "concerned at this stage of the case not with the insurer's ultimate responsibility to indemnify the insured, but with its duty to provide a defense." *Scottsdale Ins. Co. v. Ratliff*, 927 S.W.2d 531, 534 (Mo. App. 1996). Thus, again, "[t]he presence of some [potentially] insured claims in the homeowners' petition gives rise to a duty to defend, even though uninsured claims or claims beyond the coverage may also be present." *Id.* (citation omitted).